IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KARL BRYFOGLE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Civil Action No. 08-206-GMS |

**MEMORANDUM**

**I. INTRODUCTION**

This action arises from the denial of Karl Bryfogle's ("Bryfogle") claim for Social Security disability benefits. Bryfogle applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act") on April 8, 2005. 42 U.S.C. §§ 401-433, 1381-1383f. In his application and disability report, Bryfogle claimed that he became disabled due to lower back pain on March 3, 2005. (D.I. 14 at 53, 67.) After the Commissioner denied his application, Bryfogle requested a hearing before an Administrative Law Judge ("ALJ"). (Id. at 33-46.) Following the hearing, the ALJ issued a written opinion on November 20, 2007, partially granting and partially denying Bryfogle's application for DIB and SSI. (Id. at 18-27.) Specifically, the ALJ found that Bryfogle has lumbar and cervical degenerative disc disease and was disabled by it from March 3, 2005 through August 3, 2006, however, from August 4, 2006 forward, Bryfogle has been able to perform certain sedentary to light work. (Id.) Bryfogle requested a review of the AJL's decision by the Social Security Appeals Council, which denied review on February 13, 2008. (Id. at 5-7, 382-83.) On April 10, 2008, Bryfogle filed a timely appeal with this court. (D.I. 2.) Currently before this court are the parties' cross-motions for summary

judgment. Because the court finds that the ALJ's decision meets the substantial evidence test established by 42 U.S.C. § 405(g), it will deny Bryfogle's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the decision of the ALJ.

## II. BACKGROUND

Bryfogle was born on May 6, 1960. (D.I. 14 at 391.) He was a forty-four-year old male who was employed as a general laborer and carpenter when he filed for DIB and SSI on April 6, 2005. (Id.) Bryfogle's claim stems from severe lower back pain, which required surgery in April 2005. (Id. at 399.)[1] Despite the surgery being helpful to some extent, Bryfogle claims that he is still disabled under the Act. (Id. at 401.) To be eligible for DIB and SSI, Bryfogle must demonstrate that he is disabled within the meaning of sections 216(i), 223(d) and 1614(a)(3)(A). (Id. at 14.)

### A. Evidence Presented

To support his claim, Bryfogle produced his medical records regarding his condition. The court will summarize these records.

According to Dr. Balepur S. Venkataramana ("Dr. Venkataramana"), Bryfogle's spinal surgeon, as of March 14, 2005, Bryfogle suffered from severe lower back pain for the prior five years, which increased in severity over the prior two years. (Id. at 176.) A MRI of Bryfogle's lumbar spine on December 30, 2002, showed "a broad based annular bulge at L2-L3, a moderate spinal stenosis at L3-L4, and a mild spinal stenosis at L4-L5," which required surgery. (Id. at 111, 113-14, 116.)

---

[1] Bryfogle also has a history of chest pain, anxiety, and neck problems. Bryfogle, in his memorandum, does not claim that these health issues impact his residual functional capacity. Additionally, the record provides no objective medical evidence that these conditions disable Bryfogle. Accordingly, review is limited to Bryfogle's claims of debilitating lower back pain.

2

On September 21, 2004, Bryfogle went to the Milford Memorial Hospital emergency room after exacerbating his chronic back pain by "step[ping] off [a] ladder" the prior day. (Id. at 118.) A spine pain consultant completed a discography of Bryfogle's lumbar spine on January 17, 2005, finding "diffuse disc degeneration most prominent at L3-L4 and L4-L5," "non-concordant pain with provocation at L4-L5," and "an asymptomatic posterior annular tear at L2-L3 . . . ." (Id. at 161-62.)

Dr. Glen D. Rowe ("Dr. Rowe"), an orthopedic surgeon, initially examined Bryfogle on September 23, 2004, and opined that Bryfogle should not work until he had been reevaluated. (Id. at 173.) After a second examination on March 3, 2005, Dr. Rowe restricted Bryfogle to "no work" before seeing Dr. Venkataramana. (Id. at 167.) At Bryfogle's initial consultation on March 14, 2005, Dr. Venkataramana diagnosed Bryfogle with "degenerative disc disease and spinal stenosis at L3-4 and degenerative disc disease at L4-5" and expressed the need for surgery. (Id. at 176.) Dr. Venkataramana explained that, after surgery, Bryfogle should seriously consider a career change, but could probably continue carpentry work about a year later. (Id.) As a continuing course of treatment beginning March 16, 2005, Bryfogle was examined by Dr. Kartik Swaminathan ("Dr. Swaminathan"), Dr. Ganesh Balu ("Dr. Balu"), and Dr. Alfredo Romero ("Dr. Romero") on a monthly basis. (Id. at 237-52.) After the initial consultation, Dr. Swaminathan concluded that Bryfogle suffered from "Lumbar Facet Syndrom, with mild Lumbar Radiculopathy." (Id. at 246.)

On April 20, 2005, Bryfogle underwent surgery at Kent General Hospital. (Id. at 191.) The surgery, performed by Dr. Venkataramana, included "[d]ecompressive laminectomy of L3 and L4," "[d]iskectomy of L3-4 and L4-5," "[p]osterior lumbar interbody fusion using BAK cage at L3-4 and L4-5", "[p]edicle screw fixation from L3 through L5 bilaterally," and "[p]osterior lateral fusion from L3 through L5." (Id.) Based on an examination on March 5, 2005, Dr. Venkataramana dictated a

report to the Delaware Disability Determination Service ("DDS")[2] on June 4, 2005. (Id. at 198-99.) In his report, Dr. Venkataramana opined that Bryfogle was "disabled from participating in any type of work. Probably it will take a year before he can do his original job as a carpenter." (Id. at 199.)

On July 19, 2005, a DDS medical consultant completed a residual functional capacity ("RFC") assessment of Bryfogle. The report stated Bryfogle was "credible" and projected that he could begin "light activity" on March 3, 2006. (Id. at 207.) In all post-operative examination reports by Dr. Swaminathan, Dr. Balu, and Dr. Romero, dated May 25 through October 17, 2005, Bryfogle's ability to work was listed as "no work" or "disabled." (Id. at 238-43.)

On November 1, 2005, Dr. Venkataramana dictated another report to DDS regarding examinations of Bryfogle on June 27 and October 5, 2005, and a x-ray review on October 6, 2005. (Id. at 253-54.) Dr. Venkataramana diagnosed Bryfogle as "status post lumbar fusion with no real improvement." (Id. at 253.) He explained that Bryfogle probably "reached the maximum medical improvement," and "can do work related physical activities such as sitting and standing for short time dictated by his symptoms, same thing for walking." (Id. at 254) Dr. Venkataramana continued that Bryfogle "should not be lifting anything heavy . . . mean[ing] more than fifteen pounds at a time, same thing for carrying. . . . Driving may be difficult because of the pain problems." (Id.) Additionally, in a December 21, 2005 medical certification, Dr. Swaminathan stated that Bryfogle

---

[2] DDS is a state administered federal program the serves Delawareans who are unable to work because of a disability. DDS is a state agency that is governed by the Social Security Administration and 100% federally funded. DDS develops, adjudicates, and processes disability claims of residents for Social Security disability benefits. DDS's disability adjudicators determine: (1) whether a person meets the statutory definition of a disability as defined in the Social Security Act and (2) whether the disabled individual meets medical eligibility to receive Social Security Disability Insurance or Supplemental Security Income. *See generally* www.delawareworks.com/dvr/services/dds.shtml.

4

was not permitted to perform any full time work and estimated that Bryfogle's illness would last six to twelve months. (Id. at 237.) On December 22, 2005, a RFC assessment by a DDS medical consultant agreed with the conclusions in Dr. Venkataramana's November 1, 2005 report. (Id. at 257, 261.)

In a letter dated September 7, 2006, Dr. Venkataramana expressed his current diagnosis of Bryfogle to Dr. Kenneth Smith ("Dr. Smith"), Bryfogle's primary care physician who made the initial referrals to Dr. Rowe, Dr. Swaminathan, Dr. Balu, and Dr. Romero. (Id. at 264.) Based on reevaluations of Bryfogle on August 3 and September 7, 2006, Dr. Venkataramana concluded that Bryfogle was "status post lumbar fusion" with good hardware position and bone alignment requiring "purely symptomatic" treatment. (Id.) Dr. Smith subsequently composed a physician's statement dated April 5, 2007. (Id. at 296-97.) Dr. Smith explained that Bryfogle's "pain is so severe that he has to spend several unscheduled hours a day off of his feet to take the pressure off his back." (Id.) In conclusion, Dr. Smith opined that Bryfogle "could [not] sustain any kind of work on a regular basis for 40 hours per week. His complaints of chronic pain would interfere with his ability to concentrate. Furthermore, his need to rest would interfere with his ability to work on a regular basis." (Id.)

In progress notes dated February 15, 2006 through April 9, 2007, Dr. Romero listed Bryfogle's ability to work as "no work" or "disabled." (Id. at 365-79.) On the July 3, 2006 report, however, Dr. Romero noted that Bryfogle "stated good pain control [with] no side effect." (Id. at 374.) Dr. Romero, on April 9, 2007, issued a physician's statement. (Id. at 380-81.) In his statement, Dr. Romero stated the following: "normal movement while sitting causes [Bryfogle] pain," "Bryfogle complains of pain while sitting for more than one hour and he also reports pain

from standing more than one hour," and Bryfogle "reports pain when walking." (Id. at 380.) Dr. Romero asserted that Bryfogle's complaints were consistent with his condition and that Bryfogle's "reports of pain appear to be credible." (Id.) Additionally, Dr. Romero opined that "Bryfogle could not do any kind of work on a regular everyday basis for 40 hours per week since March 2005. Even sedentary work would require him to be sitting and moving. To do so would exacerbate his pain and affect his concentration." (Id. at 380-81.) Finally, Dr. Romero "assume[d] that there would be no jobs available for [Bryfogle] if it was necessary for him to lie down for several hours a day, which he in fact does do because of his condition." (Id. at 381.)

On May 14, 2007, Bryfogle completed a psychological evaluation with Dr. Joseph Keyes ("Dr. Keyes"), a DDS psychologist. (Id. at 298.) Dr. Keyes diagnosed Bryfogle with "[m]ood disorder with depressive features due to chronic back pain/disk herniation," "[p]anic disorder without agoraphobia," and "[a]lcohol dependence." (Id. at 302.) Dr. Keyes noted that "Bryfogle is capable of performing self-care skills and light activities of daily living." (Id.) Thereafter, Dr. Romero issued a medical certification on June 14, 2007. (Id. at 323.) Dr. Romero reported that Bryfogle was unable to complete any full time work and his illness will last 6-12 months. (Id.)

### B. Hearing Testimony

1. Karl Bryfogle's Testimony

At the April 18, 2007 hearing before the ALJ, Bryfogle testified about his background, the nature of his disability, and his claim for disability benefits. (D.I. 14 at 389-405.) Specifically, Bryfogle discussed his past employment as a general construction laborer and carpenter. (Id. at 391-93.) Bryfogle stated that his back problems developed in 1989. (Id. at 393.) Then, he explained

how the act of picking up some roofing shingles "knocked it out" in 2004 and he eventually ceased working in 2005. (Id. at 391, 393-94.)

In addition to his past employment and the nature of his disability, Bryfogle also testified about the course and extent of his medical treatment. (Id. at 394, 396-97, 399-401.) Specifically, Bryfogle testified that he had back surgery consisting of five procedures, including a fusion, in April 2005. (Id. at 389, 399.) Bryfogle further reported that the implanted hardware is "solid," but he has extremely soft bones and the screws could come out. (Id. at 390, 394.) He testified that the surgery did mitigate the pain because pre-surgery the pain prevented him from walking. (Id. at 401.) Even after the surgery though, Bryfogle complained of constant pain in his back, which increases when he straightens up, stands, and sits. (Id. at 399.) He asserted that he can sit for periods of fifteen to twenty minutes, stand for periods of twenty to thirty minutes, and must lay down for about four hours a day to take the weight off of his back. (Id. at 400, 403.) Bryfogle also noted that he lifts no more than twenty pounds in compliance with doctors' orders. (Id. at 402.)

In describing his daily activities, Bryfogle claimed he does laundry and cleans dishes. (Id. at 403.) He also discussed how he cares for his four-year-old son and sometimes drives about a quarter mile into town and back. (Id. at 398.) Bryfogle stated that although he tries to help out, his wife does most of the work around the house. (Id. at 402-03.)

    2.    Joanne Bryfogle's Testimony

Once Bryfogle concluded his testimony, Joanne Bryfogle ("Joanne") testified. (Id. at 405-08.) Generally, she agreed with Bryfogle's testimony and his constant pain. (Id. at 408.) Specifically, Joanne established that she and Bryfogle have been together for six years, have a four-year-old son, and got married in October 2006. (Id. at 405.) Joanne asserted that she can tell

Bryfogle is in pain a lot because of the look on his face and his complaints of pain. (Id. at 407.) Additionally, she affirmed that Bryfogle lies down for cumulative periods of four or more hours a day. (Id.) Joanne also explained that Bryfogle cannot sit or stand for long periods and cycles through short periods of sitting, standing, and walking when he is not lying down. (Id. at 407-08.)

### 3. The Vocational Expert's Testimony

At the same hearing before the ALJ, the vocational expert ("VE") offered testimony regarding Bryfogle's background, skills, and limitations and the number of jobs that exist in the national economy that a person of Bryfogle's age, education, and skills may perform. (Id. at 409-12.) Specifically, the VE testified that the exertion and skill levels of Bryfogle's work prior to his injury were heavy and semi-skilled, respectively. (Id. at 409.) In addition, the VE stated that the line of work Bryfogle performed was industry-specific and not transferable to any light or sedentary work. (Id.) When asked about the vocational consequences of Bryfogle's symptoms, the VE stated that there "would be possibly a decrease in productivity, at which a 15-20 percent reduction would preclude employment. Also, the need for unscheduled breaks, unscheduled loss of work time. A difficulty maintaining focus, and physical abilities which would vary due to the pain." (Id.) The VE noted that a hypothetical person – a younger individual with a limited education, a prior work history similar to Bryfogle's, and all the symptoms and limits Bryfogle claimed – would not be able to perform any kind of jobs. (Id. at 409-10.) In a follow-up hypothetical, the ALJ inquired:

> As far as limits, what if we have the hypothetical individual, although he says he's got all these problems, really, he might be capable of performing work activity at sedentary and light levels of exertion as defined in the Dictionary of Occupational Titles with the following provisos. Any jobs just have to be simple, routine in nature. Wouldn't take a great deal of concentration. Would also afford an

> opportunity for the hypothetical individual to occasionally change positions for postural discomfort.

(Id. at 410.) The VE explained that such an individual could perform sedentary work as a final assembler or light work as an assembler. (Id. at 411.) Finally, during questioning by Bryfogle's attorney, the VE agreed that a person with the limitations expressed in the physician's statements by Dr. Romero and Dr. Smith would have "no work available." (Id. at 411-12.)

### C. The ALJ's Findings

The ALJ must complete a five-step evaluation, which requires the following sequential analysis:

> [The Commissioner] determines first whether an individual is currently engaged in substantial gainful activity. If that individual is engaged in substantial gainful activity, he will be found not disabled regardless of the medical findings. 20 C.F.R. § 404.1520(b). If an individual is found not to be engaged in substantial gainful activity, the [Commissioner] will determine whether the medical evidence indicates that the claimant suffers from a severe impairment. 20 C.F.R. § 404.1520(c). If the [Commissioner] determines that the claimant suffers from a severe impairment, the [Commissioner] will next determine whether the impairment meets or equals a list of impairments in Appendix I of sub-part P of Regulations No. 4 of the Code of Regulations. 20 C.F.R. § 404.1520(d). If the individual meets or equals the list of impairments, the claimant will be found disabled. If he does not, the [Commissioner] must determine if the individual is capable of performing in his past relevant work considering his severe impairment. 20 C.F.R. § 404.1520(e). If the [Commissioner] determines that the individual is not capable of performing his past relevant work, then he must determine whether, considering the claimant's age, education, past work experience and residual functional capacity, he is capable of performing other work which exists in the national economy. 20 C.F.R. § 404.1520(f).

*West v. Astrue*, C.A. No. 07-158, 2009 WL 2611224, at *5 (D. Del. August 26, 2009) (quoting *Brewster v. Heckler*, 786 F.2d 581, 583-84 (3d Cir. 1986)). Based on the factual evidence and the

testimony of Bryfogle, Joanne, and the Vocational Expert, the ALJ determined that Bryfogle was disabled from March 3, 2005 through August 3, 2006, and was eligible for DIB and SSI during that period. (D.I. 14 at 27.) The ALJ found that Bryfogle was not disabled, and, therefore, was not eligible for DIB and SSI beginning on August 4, 2006. (Id.) The ALJ's findings are summarized as follows:

> 1. The claimant met the insured status requirements of the Social Security Act as of March 3, 2005, the date the claimant became disabled.
>
> 2. The claimant has not engaged in substantial gainful activity since March 3, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3. At all times relevant to this decision, the claimant has had the following severe impairments: lumbar and cervical degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. From March 3, 2005 through August 3, 2006, the period during which the claimant was disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).
>
> 5. [F]rom March 3, 2005 through August 3, 2006, the claimant did not have the residual functional capacity to perform even sedentary work on a regular and continuing basis.
>
> 6. From March 3, 2005 through August 3, 2006, the claimant was unable to perform past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on May 6, 1960 and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity assessed for the period from March 3, 2005 through August 3, 2006 (20 CFR 404.1568 and 416.968).

10. From March 3, 2005 through August 3, 2006, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant was under a disability, as defined by the Social Security Act, from March 3, 2005 through August 3, 2006 (20 CFR 404.1520(g) and 416.920(g)).

12. Medical improvement occurred as of August 4, 2006, the date the claimant's disability ended (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

13. Beginning on August 4, 2006, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2) and 416.994(b)(5)(i)).

14. [B]eginning on August 4, 2006, the claimant has had the residual functional capacity to perform sedentary to light exertional work with simple and routine jobs affording the claimant the opportunity to occasionally change positions.

15. The medical improvement that has occurred is related to the ability to work (20 CFR 404.1594(b)(4)(i) and 416.994(b)(1)(iv)(A)).

16. Since August 4, 2006, the claimant has been a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

17. Beginning on August 4, 2006, the claimant has been unable to perform past relevant work (20 CFR 404.1565 and 416.965).

18. Beginning on August 4, 2006, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has

> transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 19.     Beginning on August 4, 2006, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c), 404.156, 416.960(c), and 416.966).
>
> 20.     The claimant's disability ended on August 4, 2006 (20 CFR 404.1594(f)(8) and 416.994(b)(5)(vii)).

(Id. at 18-27.)

### III.    STANDARD OF REVIEW

#### A.     Motion for Summary Judgment

Both parties filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the non-moving party[,]' but [refraining from] weighing the evidence or making credibility determinations." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted). If the court determines that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).

#### B.     Review of the ALJ's Findings

The court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence does not mean a large or a considerable amount of evidence. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Rather, it has been defined as

"more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Credibility determinations are the province of the ALJ, and should be disturbed on review only if they are not supported by substantial evidence. *Pysher v. Apfel*, Civ. A. No. 00-1309, 2001 WL 793305, at *2 (E.D. Pa. July 11, 2001) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 973 (3d Cir. 1983)). Thus, the inquiry is not whether the court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). In social security cases, this substantial evidence standard applies to motions for summary judgment brought pursuant to Fed. R. Civ. P. 56(c). *See Woody v. Sec. of the Dep't of Health & Human Serv.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

## IV.  DISCUSSION

In this appeal, Bryfogle argues that the Commissioner did not have substantial evidence to support the denial of his application for DIB and SSI. (D.I. 17 at 9.) Bryfogle first asserts that the ALJ committed reversible error by failing to give appropriate weight to the treating physicians' opinions. (Id. at 11.) Specifically, Bryfogle contends that Dr. Smith and Dr. Romero were the treating physicians, and that the ALJ therefore should have treated their opinions as controlling. (Id. at 12.) Bryfogle also avers that the ALJ erred in making his credibility determination particularly with regard to daily activities. (Id. at 15.) Finally, Bryfogle argues that the ALJ erred when he failed to pose a proper and accurate hypothetical question supported by the record. (Id. at 17.)

After considering the parties' arguments and submissions, the court finds that the ALJ properly weighed the medical opinion of Bryfogle's treating physicians with the other physicians'

opinions and other evidence. The statutory standard for considering a treating physician's opinion clearly establishes that if a "treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). The Court of Appeals for the Third Circuit discussed the appropriate weight to be given to opinions of treating physicians in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999), where it wrote that "treating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"[3] 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)).

In this instance, the ALJ gave proper weight to the medical opinions and objective record evidence of Dr. Smith and Dr. Romero. Compared to the record as a whole, their opinions were speculative concerning the employability of Bryfogle. (D.I. 14 at 25.) Dr. Smith and Dr. Romero's congruent claims that Bryfogle would not be able to complete "any kind of work on a regular everyday basis for 40 hours per week" (id. at 296, 380) is contradicted by specific medical evidence. (Id. at 25.) Although Bryfogle suffers from back pain, Dr. Smith noted at Bryfogle's last physical examination that he had no deformity, limitation of movement, or costovertebral tenderness in his back and full range of motion, no loss of strength, and no sensory deficit or instability in his upper

---

[3] The regulations require that the ALJ evaluate the following factors: (1) examining relationship; (2)(i) length of treatment relationship and the frequency of examination; (2)(ii) nature and extent of the treatment relationship; (3) degree to which evidence supports the opinion; (4) consistency of the record as a whole; (5) specialization of the physician; and (6) other factors. *See* 20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6).

and lower extremities. (Id. at 325.) Thus, Dr. Smith's own diagnosis indicates that Bryfogle is not completely disabled. (Id. at 25.) Additionally, Dr. Smith and Dr. Romero's commentaries on Bryfogle's need to sporadically lie down are based purely on subjective complaints by Bryfogle, not objective medical evidence. (Id. at 296, 381.) Furthermore, Dr. Venkataramana determined that Bryfogle "can do work related physical activities such as sitting and standing for short time dictated by his symptoms, same thing for walking." (Id. at 254.) Dr. Venkataramana also stated that Bryfogle could lift and carry up to fifteen pounds and handle objects. (Id.) Finally, Bryfogle's admitted activities further indicate that he is not totally disabled. (Id. at 24.) Bryfogle testified that he engages in various household duties such as doing laundry and washing dishes. (Id. at 403.) He also discussed having a driver's license, occasionally driving short distances, and caring for his four-year-old son. (Id. at 398.) Therefore, the weight the ALJ accorded to the opinions of Bryfogle's treating physicians was proper.

Additionally, with due consideration given to the arguments and submissions of the parties, the court finds the ALJ justified in determining that Bryfogle's testimony was not entirely credible. In *Hartranft v. Apfel*, 181 F.3d 358 (3d Cir. 1999), the Third Circuit upheld an ALJ's determination that the plaintiff was not entirely credible after considering "1) the objective medical evidence of record; 2) [the plaintiff's] testimony as to his rehabilitation and medication regimen; and 3) [the plaintiff's] own description of his daily activities." 181 F.3d at 362.

Instantly, the ALJ found Bryfogle's testimony regarding the effects of pain as being not entirely credible. (D.I. 14 at 24.) Bryfogle asserted that his back pain was debilitating at times and laying down for about four hours a day provided relief. (Id. at 400-01.) However, Bryfogle reported to Dr. Romero that he had good pain control without side effects. (Id. at 374.) Additionally, RFC

assessments in July and December 2005 noted Bryfogle's ability to lift up to twenty pounds, stand and walk for about six hours per workday, and sit with normal breaks for about six hours per workday. (Id. at 201, 256.) Dr. Venkataramana also reported Bryfogle's capacity to complete work related physical activities and lift up to fifteen pounds. (Id. at 254.) Furthermore, Bryfogle testified to the ability to do household chores, drive a car, and care for his four-year-old son on a daily basis. (Id. at 398, 403.) Accordingly, the ALJ's credibility determination was appropriate.

Finally, having considered the parties' arguments and submissions, this court finds that the ALJ's hypotheticals were proper, accurate, and supported by the record. In *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005), the Third Circuit ruled that an ALJ's hypothetical is sufficient if it "accurately convey[s] to the vocational expert all of the claimant's *credibly established limitations*" (i.e., limitations supported by objective medical evidence). 399 F.3d at 554 (emphasis in original). The opinion notes that two basic challenges to hypotheticals arise: (1) that "the ALJ failed to convey limitations to the vocational expert that were properly identified in the RFC assessment"; and (2) that "the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert." Id. at 554 n.8. The Court continues that "[c]hallenges of the latter variety . . . are really best understood as challenges to the RFC assessment itself." Id.

In the case *sub judice*, the ALJ's first hypothetical person, which the VE found disabled, had the limitations included in all of the objective medical evidence and Bryfogle's subjective complaints. (D.I. 14 at 409-10.) The second hypothetical person, which the VE found not disabled, had all the limitations proven by objective medical evidence, but did not suffer from the type of debilitating pain Bryfogle subjectively claimed. (Id. at 410.) Therefore, Bryfogle's claim of an

16

insufficient hypothetical falls into the second category explained in *Rutherford* – a challenge to the RFC assessment itself. *See* 399 F.3d at 544 n.8. As such, since the ALJ gave appropriate weight to the treating physicians' medical opinions and properly found Bryfogle not entirely credible, the VE's answers to the ALJ's hypotheticals provided substantial evidence for the ALJ's ruling.

## V.   CONCLUSION

For the aforementioned reasons, the court concludes that the ALJ's denial of DIB and SSI from August 4, 2006 forward, is based on substantial evidence. Accordingly, the court will deny Bryfogle's motion for summary judgment and grant the Commissioner's motion for summary judgment.

_____
CHIEF, UNITED STATES DISTRICT JUDGE

September ___9___, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KARL BRYFOGLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-206-GMS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

For the reasons set forth in the Memorandum issued in this action today;

IT IS HEREBY ORDERED this ___9th___ day of September 2011, that the plaintiff's motion for summary judgment (D.I. 16) is DENIED, and the defendant's motion for summary judgment (D.I. 18) is GRANTED.

_____
CHIEF, UNITED STATES DISTRICT JUDGE